## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING,[1] | Case No. 1:26-cv-1663 |
| *Plaintiff*, | |
| vs. | **COMPLAINT** <br> **(Freedom of Information Act)** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br> 500 12th St., SW <br> Washington, D.C. 20536, | |
| *Defendant*. | |

---

[1] Pursuant to Local Civil Rule 5.1(c)(1), Plaintiff's address is being filed under seal with the Court in a separate Notice.

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief.  The Center for Investigative Reporting (CIR) brings this suit against the United States Immigration and Customs Enforcement (ICE).

2.      Through the FOIA, CIR seeks disclosure of (1) records reflecting the number of parents or guardians of a minor child that ICE has detained or deported since January 20, 2025, and certain actions taken with respect to the relevant minor children, and (2) emails to or from ICE official Monica Burke concerning certain private contractors involved in the immigrant detention facility at Fort Bliss in El Paso, Texas, now known as Camp East Montana.

3.      These records would reveal information critical to the public's understanding of how ICE is carrying out its rapidly expanding detention and deportation operations, including whether the agency can account for the parents and children swept into that expansion and how it selected, used, and replaced private contractors at one of the nation's most controversial detention facilities.

4.      To date, the agency has not complied with FOIA's statutory deadlines.  ICE has thus improperly and unlawfully withheld agency records in violation of the FOIA.

5.      CIR now asks the Court for an injunction requiring the agencies to promptly release the withheld records.

**PARTIES**

6.      Plaintiff CIR was founded in 1976 as the nation's first nonprofit investigative news organization.  CIR is a nonprofit established under the laws of the State of California, with its primary office in San Francisco, California.  CIR publishes Reveal, an online news site at revealnews.org, a weekly public radio show (also called Reveal) with approximately 1 million listeners a week, and *Mother Jones* magazine.  CIR has received multiple awards for its reporting.

1

7.      ICE is a federal agency within the meaning of 5 U.S.C. § 552(f).  CIR is informed and believes that ICE has possession and control of the records sought by the FOIA requests.

<b>JURISDICTION AND VENUE</b>

8.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

<b>BACKGROUND</b>

**A.      ICE's Detention and Deportation of Parents and Guardians of Minor Children.**

*1.      The government's immigration policies continue to separate families.*

10.      ICE's enforcement expansion, predictably, has swept in parents of minor children, resulting in family separation, transfers across state lines, and placement of some children into foster care after their parents were detained or deported.

11.      Recent reporting indicates that in the first seven months of the second Trump Administration, authorities arrested and detained parents of at least 11,000 U.S. citizen children, an average of more than 50 U.S. citizen children per day with a parent taken into detention.[2]

12.      In 2025, ICE revised its directive governing the detention and removal of noncitizen parents and legal guardians of minor children.  The Women's Refugee Commission concluded that the revised directive "substantially weakens protections for noncitizen parents" and "increases the likelihood that parents will be needlessly separated from their children."[3]

---

[2] Jeff Ernsthausen, Mario Ariza, McKenzie Funk, Mica Rosenberg, & Gabriel Sandoval, *Trump Has Detained the Parents of 11,000 U.S. Citizen Kids*, ProPublica (Mar. 23, 2026), https://perma.cc/C73F-7VDB.
[3] Women's Refugee Comm'n, *The 2025 ICE Detained Parents Directive Vs. the 2022 ICE Parental Interests Directive* (updated Aug. 11, 2025), https://perma.cc/5X9Q-2QMR.

13.    Reuters reported in February 2025 that the Trump administration directed ICE agents to locate and deport unaccompanied migrant children, a strategy that could also lead to the arrests of any parents or guardians living with those minors.[4]

2.    *ICE struggles to track separated minor children.*

14.    In July 2024, the Government Accountability Office (GAO) reported that ICE's public detention reporting understates the total number of individuals detained because of how ICE calculates those figures.  GAO found that ICE excludes some people first booked into temporary facilities, which can amount to tens of thousands of individuals omitted from public totals.[5]

15.    The Department of Homeland Security (DHS) Office of the Inspector General (OIG) also identified major weaknesses in ICE's ability to track, manage, and report immigration enforcement data in 2025.[6]

16.    Independent researchers have also documented repeated inaccuracies in ICE's published detention and monitoring data.  In 2022, 2023, and 2025, the Transactional Records

---

[4] Marisa Taylor, Ted Hesson & Kristina Cooke, *Trump Officials Launch ICE Effort to Deport Unaccompanied Migrant Children*, Reuters (Feb. 23, 2025), https://www.reuters.com/world/us/trump-administration-directs-ice-agents-find-deport-unaccompanied-migrant-2025-02-23/.

[5] U.S. Gov't Accountability Off., *Immigration Enforcement: Arrests, Removals, and Detentions Varied Over Time and ICE Should Strengthen Data Reporting*, GAO-24-106233 (July 23, 2024), https://www.gao.gov/assets/gao-24-106233.pdf.

[6] U.S. Dep't of Homeland Sec., Off. of Inspector Gen., *ICE Cannot Effectively Monitor the Location and Status of All Unaccompanied Alien Children After Federal Custody*, OIG-25-21 (Mar. 25, 2025), https://perma.cc/28UJ-4H9G.

Access Clearinghouse (TRAC) found inaccuracies in ICE's Alternatives to Detention data and, in 2025, described "strange inconsistencies" in ICE detention statistics.[7]

17.    The federal government has struggled to track the location and status of migrant children after release from federal custody.  Those failures heighten the public importance of records showing how ICE's enforcement affects parents and children.

18.    DHS OIG likewise reported in 2025 that ICE "cannot effectively monitor the location and status" of all unaccompanied children after federal custody.[8]  The report stated that ICE transferred more than 448,000 unaccompanied children to the Department of Health and Human Services (HHS) from fiscal years 2019 through 2023,[9] that more than 32,000 failed to appear for court,[10] and that more than 291,000 had not been served notices to appear as of May 2024.[11]  Those findings make records about parents and guardians plainly newsworthy because they show how ICE enforcement affects family unity and child welfare.

19.    The requested records would contribute significantly to the public's understanding of the scale and consequences of ICE detention and deportation of parents and guardians of minor children.

---

[7] Transactional Records Access Clearinghouse, *ICE Posts Wrong Numbers on Alternatives to Detention (ATD) Monitoring* (Dec. 14, 2022), https://perma.cc/7W27-XFDQ; Transactional Records Access Clearinghouse, *ICE Again Bungles Alternatives to Detention Data, Claims Contractor is Charging $550,000 Per Day* (May 31, 2023), https://perma.cc/245Z-AEBY; Transactional Records Access Clearinghouse, *Strange Inconsistencies in ICE Detention Statistics* (Feb. 20, 2025), https://perma.cc/9MRR-J2HW.
[8] U.S. Dep't of Homeland Sec., Off. of Inspector Gen., *supra* note 6, at 4.
[9] *Id*. at 2.
[10] *Id.* at 7.
[11] *Id.* at 6.

B.    **ICE's use of private contractors to build Camp East Montana.**

1.    *ICE has privatized core government functions.*

20.    As part of its promised campaign of mass deportations, the Trump Administration deployed ICE agents in large numbers throughout the country.  In December 2025, ICE averaged 1,300 arrests per day, more than triple the average over the decade before the second Trump Administration.[12]

21.    As part of that effort, the government turned to the military to handle tasks that had traditionally been left to civilian agencies, including the construction of detention facilities.[13]

22.    The requested records warrant immediate disclosure because they concern the camp's management and oversight at the precise moment ICE is changing contractors and reconsidering the facility's future.[14]

2.    *Camp East Montana illustrates the risks of ICE's contractor-driven expansion.*

23.    In July 2025, the federal government announced plans to build what would become the nation's largest immigration detention center at Fort Bliss in El Paso, Texas: Camp East Montana.[15]  The planned capacity was in the thousands.[16]

---

[12] Ted Hesson, *What Do the Numbers Show About Trump's Immigration Enforcement Record?*, Reuters (updated Apr. 22, 2026), https://www.reuters.com/world/us/trumps-early-immigration-enforcement-record-by-numbers-2026-04-22/.

[13] Colleen DeGuzman, *Feds Plan to Build Nation's Biggest Migrant Detention Center at Fort Bliss*, The Tex. Tribune (July 23, 2025), https://perma.cc/8AB9-8K8W.

[14] Douglas MacMillan, *ICE Plans to Keep Fort Bliss Detention Camp Open Under a New Contractor,* Wash. Post (Mar. 11, 2026), https://www.washingtonpost.com/business/2026/03/11/fort-bliss-detention-center-contractor/.

[15] DeGuzman, *supra* note 13.

[16] *Id.*

24.     At first, ICE chose Acquisition Logistics to build the camp.  Reporters quickly raised concerns about the company's lack of experience running a correction facility; the company lacked even a functional website.[17]

25.     The Pentagon has reportedly refused to release the contract or explain why it selected Acquisition Logistics.  At least one other contractor out of the dozens who applied has challenged the award.[18]

26.     Shortly after Camp East Montana opened in August 2025, an immigration attorney reported that facility staff said only one attorney at a time could enter the facility and that the attorney could meet with only ten detainees per day, effectively limiting access to counsel for thousands held at the site.[19]

27.     Reports soon tied the facility to emergency medical calls, multiple deaths, and unsafe and abusive conditions.  For example, a required ICE inspection found conditions at the facility violated at least 60 federal standards for immigration detention.[20]

28.     Unlike dozens of other inspection reports freely available on ICE's website, ICE has never released that report.[21]

---

[17] Michael Biesecker & Joshua Goodman, *Mystery Surrounds $1.2 Billion Army Contract to Build Huge Detention Tent Camp in Texas Desert*, Associated Press (Aug. 28, 2025), https://perma.cc/52T3-C3MG.

[18] *Id.*

[19] Brian Fraga, *Accompaniment Takes Place Sometimes Daily at Texas Immigration Detention Center,* Nat'l Cath. Rep. (Mar. 12, 2026), https://www.ncronline.org/news/accompaniment-takes-place-sometimes-daily-texas-immigration-detention-center.

[20] Douglas MacMillan, Samuel Oakford, N. Kirkpatrick & Aaron Schaffer, *60 Violations in 50 Days: Inside ICE's Giant Tent Facility at Ft. Bliss*, Wash. Post (Sept. 16, 2025), https://www.washingtonpost.com/business/2025/09/16/ice-detention-center-immigration-violations/.

[21] *Id.*

29.    In September 2025, Rep. Veronica Escobar expressed concerns about conditions at Camp East Montana in a letter to federal officials.[22]

30.    Rep. Escobar followed up in November 2025, warning that turnover was so high that "neither ICE nor staff at the facility have an accurate headcount of the population at Camp East Montana."[23]

31.    Rep. Escobar also wrote that those problems had persisted since her earlier oversight visits, that officials had not adequately resolved some of them, and that the facility had developed additional problems.[24]

32.    In December 2025, the American Civil Liberties Union (ACLU) and human rights groups released a letter based on months of interviews with over 45 detained people at Fort Bliss, along with 16 sworn declarations by immigrants detained at the facility, demanding an investigation.   According to the letter, "ICE officers at Ft. Bliss [. . .] flagrantly violate statutory, regulatory, and due process protections as well as the agency's own policy."[25]

33.    Less than eight months after Camp East Montana opened, ICE moved to terminate Acquisition Logistics' contract before installing a replacement contractor.[26]

---

[22] Press Release, *Congresswoman Escobar Expresses Further Concern Over Lack of Transparency and Communication from ICE, DHS,* Office of Rep. Veronica Escobar (Sept. 26, 2025), https://perma.cc/63HT-FGVD.

[23] Press Release, *Congresswoman Escobar Sends Follow Up Letter about Conditions at Camp East Montana*, Office of Rep. Veronica Escobar (Nov. 7, 2025), https://perma.cc/F5SR-URRW.

[24] *Id.*

[25] Letter from American Civil Liberties Union et al. to Todd Lyons, Immigration and Customs Enforcement, et al. (Dec. 8, 2025), https://assets.aclu.org/live/uploads/2025/12/2025-12-8-Ft-Bliss-ICE-Detention-Letter-FINAL.pdf.

[26] MacMillan*, supra* note 14.

34.     The requested records would illuminate how ICE evaluated Acquisition Logistics and related vendors, what concerns drove the contract change, and if the agency is managing detention expansion safely through private contractors.

35.     More than 30 people died in ICE detention in 2025, the highest level since 2004.[27] For at least one of these deaths, the government's public explanations changed over time.[28] Inconsistent reports from the government like this demonstrate the need for transparency into internal communications and contractor oversight.

36.     ICE plans to continue expanding.  In February, documents revealed a $38 billion plan to convert industrial warehouses into detention centers, some capable of holding as many as 10,000 detainees at a time.[29]

37.     Through this action, CIR seeks public records needed to aid the public's understanding of the government's rapidly expanding detention and deportation apparatus.

C.     **CIR's FOIA Requests.**

1.     *CIR requests records relating to detained or deported parents.*

38.     On June 26, 2025, Samantha Michaels submitted a FOIA request, on behalf of CIR, to ICE seeking records that show:

---

[27] Maanvi Singh, Coral Murphy Marcos, & Charlotte Simmonds, *2025 was ICE's Deadliest Year in Two Decades*, The Guardian (Jan. 4, 2026), https://www.theguardian.com/us-news/ng-interactive/2026/jan/04/ice-2025-deaths-timeline.

[28] Ted Hesson, *US Officials Provide Shifting Accounts of ICE Detainee Death in Texas Military Camp,* Reuters (Jan. 16, 2026), https://www.reuters.com/legal/government/us-officials-provide-shifting-accounts-ice-detainee-death-texas-military-camp-2026-01-16/.

[29] Ryan Patrick Jones, *ICE to Spend $38.3 Billion on Detention Centers Across U.S., Document Shows,* Reuters (Feb. 13, 2026), https://www.reuters.com/world/us/ice-spend-383-billion-detention-centers-across-us-document-shows-2026-02-13/; Douglas MacMillan and Jonathan O'Connell, *ICE Plans to Spend $38.3 Billion Turning Warehouses into Detention Centers*, Wash. Post (Feb. 13, 2026), https://www.washingtonpost.com/business/2026/02/13/ice-detention-center-expansion/.

8

(1) the number of immigrants whom ICE has detained or deported nationwide who are parents or guardians of a minor child, from January 20, 2025 to present;

(2) in the above cases, the number of times ICE contacted the local child welfare authority or law enforcement agency to take custody of the minor child;

(3) what happened to the other minor children in cases when ICE did not contact child welfare or law enforcement to take custody.

A true and correct copy of this request (the "Parent/Guardian Detention Request") is attached as **Exhibit 1**.

39.    ICE acknowledged receipt of the Parent/Guardian Detention Request by correspondence dated July 2, 2025, and assigned it FOIA Case Number 2025-ICFO-45519.

40.    In its acknowledgment, ICE invoked a 10-day extension under 5 U.S.C. § 552(a)(6)(B) and stated that it had queried the appropriate program offices for responsive records.

41.    On February 26, 2026, after months without a substantive response, Ms. Michaels emailed ICE to ask for the status of the Parent/Guardian Detention Request. After several more weeks without a substantive response, Ms. Michaels emailed again to ask for the status of this request.

42.    On April 20, 2026, ICE sent an email noting that the "request is currently pending the search for responsive documents" and "[i]f any responsive records are located, they will be reviewed for a determination of releasability."

43.    As of the filing of this Complaint, and despite the requirements of 5 U.S.C. § 552(a)(6)(A)(i), ICE has not notified CIR of the scope of documents that it will produce or the scope of documents that it plans to withhold in response to the Parent/Guardian Detention Request.

44.    As of the filing of this Complaint, and despite the requirements of 5 U.S.C. § 552(a)(6)(A)(i), ICE has not notified CIR of whether ICE possesses public records responsive to

9

the Parent/Guardian Detention Request or the scope of material that ICE will produce or withhold in response to same.

45.    Because ICE has failed to make a determination on the Parent/Guardian Detention Request within the time period required by law, CIR is deemed to have exhausted administrative remedies.  *See* 5 U.S.C. § 552(a)(6)(A), (a)(6)(C)(i).

2.    *CIR requests records concerning Camp East Montana.*

46.    On September 11, 2025, Ms. Michaels submitted a FOIA request to ICE seeking emails to or from Monica Burke concerning the following contractors: Acquisition Logistics, Disaster Management Group, Deployed Resources, Gemini Tech Services, CoreCivic, GEO Group, Akima, People Who Think, CSI Aviation, Palantir Technologies, Amentum, Loyal Source, Team Housing Solutions, Telos Corporation, Salus Worldwide Solutions Corp, and B12 Technologies, from January 20, 2025 to the present (the "Camp East Request").  A true and correct copy of the Camp East Request is attached as **Exhibit 2**.

47.    CIR also asked for disclosure of "emails to/from any ICE employee" concerning the aforementioned companies.

48.    By correspondence dated January 22, 2026, ICE stated that it required clarification and asserted that the Camp East Request, as originally framed, was too broad and would require an extensive search.

49.    On February 11, 2026, Ms. Michaels responded and narrowed the Camp East Request.  She explained that she was seeking "emails to/from Monica Burke concerning Acquisition Logistics, Disaster Management Group, Deployed Resources, and Gemini Tech Services in relation to the immigrant detention facility now known as Camp East Montana in

Texas, from January 20, 2025 to present." Ms. Michaels added that she is seeking "emails in which Burke is a sender, a recipient, or copied."

50. On March 4, 2026, Ms. Michaels emailed ICE requesting confirmation that the narrowed Camp East Request had been received.

51. ICE sent an automatic email response that "[d]ue to the current federal funding hiatus, ICE FOIA will not be able to return emails until the conclusion of the funding hiatus."

52. On April 22, 2026, ICE responded that the request was "in the process of being reviewed for initial determination of compliance with the FOIA and DHS regulations."

53. As of the filing of this Complaint, and despite the requirements of 5 U.S.C. § 552(a)(6)(A)(i), ICE has not notified CIR of the scope of documents that it will produce or the scope of documents that it plans to withhold in response to the Camp East Request.

## CAUSE OF ACTION

### Violation of FOIA, 5 U.S.C. § 552

54. CIR incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

55. CIR properly made and submitted two FOIA requests to ICE: the Parent/Guardian Detention Request and the Camp East Request (together, the "Requests"). The Requests seek disclosure of agency records within ICE's control.

56. ICE is in violation of FOIA.

57. ICE's failure to promptly make available the records sought by the Requests violates FOIA, 5 U.S.C. § 552(a)(3)(A).

58. ICE's failure to make an adequate search for records responsive to the Requests violates FOIA, 5 U.S.C. § 552(a)(3)(C), (D).

11

59.    There is no lawful basis for ICE to withhold, in whole or in part, the records CIR has requested under either of the Requests.

60.    ICE's failure to comply with time limits under FOIA bars ICE from charging CIR search, processing, or duplication fees.  5 U.S.C. § 552(a)(4)(A)(viii).

61.    CIR is being irreparably harmed by ICE's violation of FOIA, and CIR will continue to be irreparably harmed unless ICE is compelled to comply with its statutory obligations.

<b>PRAYER FOR RELIEF</b>

For these reasons, CIR requests that the Court award the following relief:

a.    Order ICE to immediately release to CIR the records sought in the Requests;

b.    Declare that the documents sought by their FOIA request, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and enjoin ICE from continuing to withhold any and all non-exempt responsive records;

c.    Enjoin ICE from charging CIR search, review, or duplication fees associated with processing the Requests;

d.    Award CIR costs and reasonable attorneys' fees incurred in this action as provided in 5 U.S.C. § 552(a)(4)(E); and

e.    Grant such other and further relief as the Court may deem just and proper.


Dated: May 14, 2026                          Respectfully submitted,

 _/s/ Kathleen Shelton_____
Kathleen Shelton (DC Bar No. 1619066)
Clayton L. Bailey (DC Bar No. 1644867)
Margaret (Emmy) Wydman (DC Bar No. 90007646)
**Civil Service Law Center LLP**
1455 Pennsylvania Ave NW, Suite 400,
Washington, DC 20004

12

(202) 505-7920
kshelton@civilservicellp.com
cbailey@civilservicellp.com
ewydman@civilservicellp.com

13